IN THE MATTER OF FRANCIS X. MORRISSEY.

Suffolk.    June 24, 1974. — July 12, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Judge.    Supreme Judicial Court*, Supervision of inferior courts.

The personal behavior of a State judge, who made inquiry of, without attempting to influence, a Federal prosecutor concerning a case pending against a friend and later accepted a $4,000 gift from that friend, was not "beyond reproach" and violated Canon Four, Canons of Judicial Ethics. [14-17]

INFORMATION filed in this court on September 10, 1973.

Evidence and arguments were heard by *Hennessey, J.,* and a report of findings and rulings was filed by him.

*Edward J. Barshak & David A. Barry,* Designated Counsel.

*Walter J. Hurley* for the respondent Morrissey.

BY THE COURT.    Francis X. Morrissey has been a judge of the Municipal Court of the City of Boston since 1958. On May 17, 1973, there appeared in a Boston newspaper a news article containing allegations of possible improper conduct by Judge Morrissey. Those allegations arose principally from the fact that Judge Morrissey, in September of 1967, received and deposited to his account a check in the amount of $4,000 drawn by the Baltimore Paint and Chemical Corporation (Baltimore Paint), a corporation controlled by one Edward Krock. Inscribed on that check was the notation "Legal fees." In a subsequent, separate legal proceeding an attorney for Krock conceded that the $4,000 check was not a proper charge against Baltimore Paint but instead should properly have been charged to Krock's personal account. The newspaper article suggested the possibilities, first, that the check constituted compensation for Judge Morrissey's having intervened to influence a Securities and Exchange Commission (SEC) complaint against Krock which in 1967 was pending in a Federal Court, and second, that the check was compensation for legal services performed for Krock by Judge Morrissey.

On May 25, 1973, the Chief Justice of this court, on behalf of the full court, by letter instructed Chief Justice Jacob Lewiton of the Municipal Court of the City of Boston to conduct an investigation of the allegations contained in the article and thereafter to submit a report to this court. After conducting such an investigation Chief Justice Lewiton, on August 1, 1973, submitted a detailed report of his findings. Based on information obtained from interviews with seven individuals (including Judge Morrissey but not including Krock) and from an examination of the records of the United States Attorney for the District of Massachusetts, Chief Justice Lewiton found that Judge Morrissey had received a check in the amount of $4,000 drawn on the account of Baltimore Paint, that Judge Morrissey believed such check was a gift from Krock personally, and that such check was indeed a gift and was not given to Judge Morrissey as compensation for legal

services rendered to Krock or for intervention in Krock's behalf in a Federal criminal investigation. Chief Justice Lewiton also found, however, that Judge Morrissey in 1967 had in fact inquired of the United States Attorney if the SEC had filed a criminal complaint against Krock. Based on these findings, Chief Justice Lewiton concluded that Judge Morrissey had violated no statute or applicable code of ethics.[1] He further concluded, however, that Judge Morrissey's conduct in accepting a substantial gift of money from an individual who was the subject of a Federal criminal complaint was "ill-advised."

On September 10, 1973, this court ordered that Chief Justice Lewiton's report be received by it as an "Informa-tion." On the same date the full court referred the matter to a single justice for further proceedings.

Between September, 1973, and March, 1974, an exten-sive investigation of the allegations against Judge Morris-sey was conduced by two attorneys who had been desig-nated as counsel and associate counsel for the court. A report of that investigation was filed with the court on March 25, 1974. After receiving that report, the full court ordered that evidence and arguments be heard by the single justice.[2] Such a hearing was held on May 16, 17 and 20, 1974,[3] during which the single justice heard testimony from five witnesses (including Judge Morrissey), heard sum-maries of the depositions of eleven additional witnesses (including Krock), and received several exhibits in evi-

---

[1] The Code of Judicial Conduct (S.J.C. Rule 3:25, 359 Mass. 841), which prohibits the acceptance by judges of substantial gifts, was not adopted in Massachusetts until 1972, becoming effective on January 1, 1973.

[2] In addition to the matter investigated by Chief Justice Lewiton, the single justice also heard evidence on a second matter involving the receipt by Judge Morrissey of compensation for services performed for a New York corporation up to and including the year 1972. These services were not legal services. Judge Morrissey received no such compensation after January 1, 1973, the date on which the Code of Judicial Conduct became effective for Massachusetts judges. We agree with the conclusion of the single justice that there was nothing improper about Judge Morrissey's conduct with respect to this matter.

[3] An additional brief hearing was held on May 28, solely for the purpose of deciding an evidentiary matter.

dence.[4] Judge Morrissey was represented by counsel at this hearing. Following the conclusion of the hearing the single justice issued a comprehensive report of findings and rulings. We summarize his findings.

Judge Morrissey and his wife and Krock and his wife had been close friends for a number of years prior to and including 1967. In April of 1967, during a dinner party, Krock informed Judge Morrissey of the pending SEC investigation and expressed concern whether a complaint had been filed by the SEC with the United States Attorney in Boston. He made no request of Judge Morrissey that he take any action or make any request on his (Krock's) behalf. A few days later, however, Judge Morrissey did inquire of the United States Attorney whether such a complaint against Krock had been filed. A complaint had, in fact, been received in the United States Attorney's office just a few days before Judge Morrissey's inquiry. Other than some possible comments on the respective characters of Krock and the complainant in the SEC matter, Judge Morrissey made no comment on the merits of the complaint and the United States Attorney did not construe the inquiry as an attempt to influence the handling of the case. Subsequent to this inquiry, Judge Morrissey's sole involvement in the SEC matter was to recommend several attorneys to Krock. In December of 1968, the United States Attorney in Boston decided not to prosecute the SEC complaint against Krock, a decision concurred in by the Chief of the Fraud Section of the Criminal Division of the United States Department of Justice. The decision not to prosecute was based on considerations having nothing whatsoever to do with Judge Morrissey.[5]

---

[4] The single justice also received, for custody purposes only, the depositions of certain other witnesses which had been obtained by the court appointed counsel. Counsel declined to offer those depositions as evidence because they contained hearsay statements of doubtful reliability. We concur in the decision of the single justice not to accept those depositions as evidence.

[5] There was testimony by the former United States Attorney and by a former assistant United States Attorney that the case against Krock was weak and that there was substantial doubt as to the credibility of the principal complainant in

The $4,000 check which Judge Morrissey received from Baltimore Paint was issued by the corporation on orders from Krock. Krock's intent was to make a gift to the Morrisseys for the purpose of defraying the cost of a wedding of one of the Morrisseys' daughters which Krock had attended in July of 1967. Krock had previously made known to Judge Morrissey that he intended to make such a gift, and Judge Morrissey so construed the purpose of the check when he received it.[6] Krock had also informed Judge Morrissey that he controlled Baltimore Paint, that Baltimore Paint owed Krock the $4,000, and that the check would be charged against Krock's personal account.[7] In addition, Judge Morrissey knew that Krock was a very wealthy man, reputed to have an annual income of $1,000,000. In 1968 Krock stated to his accountant that the $4,000 check was a gift to help defray the Morrisseys' wedding expenses. At no time has Krock made any statement inconsistent with the conclusion that the check was intended as a gift.

This matter is now before the full court for final disposition. The record before us contains all the evidence heard by the single justice, including a transcript of the testimony, the depositions, and the other exhibits.[8] In this setting we believe that the proper standard of review is that which is applied in suits in equity where the evidence is reported and there is a report of material facts. See *All*

the case. In addition, more serious charges were then pending against Krock in the office of the United States Attorney for the Southern District of New York, and the Justice Department decided to pursue those charges rather than the Massachusetts case.

[6] The single justice found it more likely than not that the notation "Legal fees" was on the check at the time Judge Morrissey received it. Judge Morrissey testified that he did not notice any such notation. There was evidence that, routinely, checks in payment for legal fees carried some explanation of the services rendered. There was no such explanation on this check.

[7] Krock was, in fact, involved in a scheme of improperly diverting corporate funds to his personal use. Judge Morrissey had no knowledge of this scheme in 1967.

[8] Counsel for the court and counsel for Judge Morrissey waived the opportunity for oral argument to the full court.

*Stainless, Inc.* v. *Colby,* 364 Mass. 773, 775-776 (1974). Thus, we may examine the evidence and find facts not expressly found by the single justice, but we may reverse the single justice's findings of fact only if we are satisfied that they are plainly wrong. *Richmond Bros. Inc.* v. *Westinghouse Bdcst. Co. Inc.* 357 Mass. 106, 109 (1970). Reed, Equity Pleading & Practice, § 1160 (1952) (Supp. 1973).

We have examined the evidence and have found no reason to disturb the findings of fact of the single justice. They are certainly not "plainly wrong." On the contrary we think they are plainly correct. Based on those findings we reach the following conclusions, which are substantially identical to the single justice's "Ultimate Findings." We conclude that: Judge Morrissey did not influence and made no attempt to influence the handling of the SEC complaint against Krock; Judge Morrissey at no time performed legal services for Krock; the $4,000 check was a gift from Krock to Judge Morrissey and was not payment for services rendered. But notwithstanding the foregoing conclusions, we conclude that Judge Morrissey acted improperly in two respects in that as an active judge he made inquiry of a prosecuting officer concerning a pending case and he accepted a gift of a substantial sum of money from the person who was the subject of the pending case. In these two respects we find that Judge Morrissey demonstrated insensitivity to the then controlling[9] Canons of Judicial Ethics which required that a judge's personal behavior "should be beyond reproach." Canon 4. It is clear, however, that we are not here dealing with illegal and corrupt acts on the part of a judge; rather, this is a case of careless disregard of the requirement that a judge's conduct be such as to avoid even the appearance of impropriety.

That the standards imposed on judges are high goes without saying. Because of the great power and responsibility judges have in passing judgment on their fellow citizens, such standards are desirable and necessary and

---

[9] See *Matter of Troy,* 364 Mass. 15, 69 (1973).

there should be strict adherence to them. Failure on the part of even a few judges to comply with these standards serves to degrade and demean the entire judiciary and to erode public confidence in the judicial process. Anyone who is unwilling to accept and abide by such stringent rules of conduct should not aspire to or accept the great honor and the grave responsibility of serving on the bench.

We believe that the great majority of judges in the Commonwealth, past and present, have subscribed to this rigid code of personal and official conduct. Witness the fact that over generations of judicial service involving many hundreds of judges, only in a miniscule number of cases has it been necessary to discipline any of them. It is true that even these few instances should not have occurred. But it is also true that the resulting disciplinary measures have served to give assurance to the public that such conduct will not be tolerated and that the judiciary itself is ever ready to carry out the corrective process when necessary. It is in this spirit that this court has supported the concept of a constitutional amendment for the formation of a commission with the power necessary to investigate and establish facts concerning possible judicial misconduct. As an interim procedure, pending constitutional change, this court has supported legislation having, within constitutional limits, the same purpose and aim. When all the facts are brought forward in any situation the court will act decisively, with fairness and, when the circumstances warrant, with compassion.

By his unfortunate conduct as recited above, Judge Morrissey has shown a careless disregard of his obligation to the public and to the great number of judges who, on a daily basis, render dedicated and trustworthy service to the public. In doing so he has brought much harm to the courts.

Judge Morrissey did not, we are satisfied, attempt improperly to influence the outcome of a case in the Federal Court. Nor did he, with respect to that case, engage in the practice of law after his appointment to the bench.

In the circumstances, we feel that suspension from office or from the bar of the Commonwealth, or disbarment, are

penalties too severe to inflict. Judge Morrissey should be and is hereby censured. Further, he is ordered to pay within ninety days the sum of $5,000, as costs in these proceedings, to the Treasurer of the Commonwealth.

In arriving at this determination, we have given due consideration to the fact that the acts complained of occurred more than seven years ago and prior to the establishment of our Code of Judicial Conduct.

*So ordered.*