### IN THE MATTER OF FRANCIS J. LARKIN.

Suffolk. May 28, 1975. — June 6, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Judge. Supreme Judicial Court,* Supervision of inferior courts.

Upon consideration of all the circumstances surrounding a single, serious error of judgment on the part of a judge of a District Court in attempting to give money collected from members of his family and his wife's family, but none of which came from the judge or his wife, to the Governor in connection with his reelection campaign, in violation of the Massachusetts election laws and of the Code of Judicial Conduct, this court censured the judge and fined him the costs of the censure proceedings. [92]

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on March 25, 1975.

A report was filed by *Wilkins, J.*

*Gael Mahony & Richard W. Renehan,* Designated Counsel.

*Charles K. Bergin, Jr., & George M. Ford* for the respondent.

BY THE COURT.   In the late afternoon of Saturday, November 2, 1974, Francis J. Larkin, presiding judge of the Third District Court of Southern Worcester, delivered an envelope containing $1,000 in cash at the Dover home of Governor Francis W. Sargent.   The envelope, which was partly open, was handed to a member of the State police security detail at the Governor's property.   It contained a note which read: "Dear Governor: With deep gratitude and the warmest best wishes and prayer for Tuesday, your friend, Frank Larkin."   At the bottom of the note the word "over" appeared, and on the reverse side of the note the following words were written: "Attribution: Mrs. Leo Fitzpatrick, 105 Oak Lane, Brockton, Mass., housewife."   Mrs. Fitzpatrick is Judge Larkin's mother-in-law.

This $1,000 contribution was the total of individual contributions from various members of Judge Larkin's family and his wife's family.   None of the money came from Judge Larkin or his wife.   The envelope, the note and the $1,000 were returned to Judge Larkin on instructions from the Governor.   A subsequent attempt by Judge Larkin to implement a contribution to the "Sargent Committee" by means of a check for $1,000 drawn by his mother was rejected.

On November 26, 1974, an article appeared in The Boston Globe stating that Judge Larkin had left an envelope containing $1,000 at the Governor's home three days before the recent election.   The article further reported that the Governor had directed that the envelope and its contents be returned promptly to Judge Larkin.   On November 26, Judge Larkin voluntarily sus-

pended himself from sitting on any matter. That suspension has continued to this date. On December 4, 1974, this court received a report from the grievance committee of the District Courts. We designated counsel to investigate all aspects of the matter and to make a report.

On March 25, 1975, designated counsel filed an information describing the nature of their investigation and alleging certain facts and conclusions. The factual details need not be repeated here. The basic circumstances concerning the attempted gift, based on the investigation of designated counsel, are set forth earlier in this opinion.

Designated counsel asserted that the attempted gift was a violation of G. L. c. 55, § 13, as amended through St. 1954, c. 530,[1] or an attempt to violate that statute and thus a violation of G. L. c. 274, § 6. The information alleged a violation, or attempted violation, of G. L. c. 55, § 11, as amended through St. 1974, c. 123.[2] The information also alleged that if the gift had been accepted, Judge Larkin's conduct would have caused others to violate certain criminal statutes. See G. L. c. 55, § 7A, inserted by St. 1973, c. 1173, § 5, making the acceptance of a cash contribution of more than $100 a

_____

[1] General Laws c. 55, § 13, reads in part as follows: "No officer, clerk or other person in the service of the commonwealth or of any county, city or town shall, directly or indirectly, give or deliver to an officer, clerk or person in said service, or to any councillor, member of the general court, alderman, councilman or commissioner, any money or other valuable thing on account of, or to be applied to, the promotion of any political object whatever."

[2] The first sentence of G. L. c. 55, § 11, reads as follows: "No person employed for compensation, other than an elected officer, by the commonwealth or any county, city or town shall directly or indirectly solicit or receive any gift, payment, contribution, assessment, subscription or promise of money or other thing of value for the political campaign purposes of any candidate for public office or of any political committee, or for any political purpose whatever, but this section shall not prevent such persons from being members of political organizations or committees."

crime, and G. L. c. 55, § 8, as appearing in St. 1962, c. 444, § 6, making the improper disclosure of the source of a political contribution a crime.

The information alleged violations of the letter or spirit of Canons 1 and 2 of the Code of Judicial Conduct. S.J.C. Rule 3:25, 359 Mass. 841, 842 (1972).[3] It alleged also a violation of Canon 7, 359 Mass. 853 (1972), which provides that a judge should refrain from political activity.

We transferred this matter to the county court for the completion of pleadings, and we subsequently ordered that a single justice of this court determine the facts and make a report thereof to the full court.

On May 22, 1975, Judge Larkin filed an amended response to the information, admitting all of its allegations.[4] At the same time he submitted a letter to the single justice, the substance. of which is set forth in the margin.[5] Thereupon the single justice reported the matter to the full court for disposition. As there is no dispute over the facts and there is an admission of violations of law and of certain canons of judicial conduct, the

---

[3] These Canons read in part as follows:
"1. A judge should uphold the integrity and independence of the judiciary."
"2. A judge should avoid impropriety and the appearance of impropriety in all his activities."

[4] The admission of certain alleged violations, attempted violations or potential violations of criminal statutes by Judge Larkin and others was made "for the purpose of this proceeding only."

[5] "For the purposes of the above-entitled proceeding only, and to confirm the oral statements of my counsel, Messrs. Bergin and Ford, I make the following ackowledgements.
"The factual allegations contained in the Information, in substance, are true and accurate. Upon reflection, I have concluded that my conduct, as set forth in the Information, was improper, contravened the letter and spirit of the Massachusetts election laws and, further, was in violation of the Canons of the Code of Judicial Conduct.
"I accept full responsibility for my actions and, with all humility and contriteness, apologize, publicly, for my conduct."

only question for the court is the appropriate disposition in this proceeding.

It is clear beyond question that Judge Larkin exercised extremely poor judgment in attempting to deliver a campaign gift to Governor Sargent. Plainly Judge Larkin did not consider the legal and ethical ramifications of his conduct before he acted. If he had intended consciously to violate the law and the Code of Judicial Conduct, he would not have handed a partially opened envelope containing $1,000 in cash to a State police officer for delivery to the Governor. On the other hand, Judge Larkin's conduct, even if innocently motivated, raised serious questions about violations of criminal statutes and could have resulted in criminal violations by the intended donors and the intended donee. There are equally serious questions with regard to the ethical propriety of Judge Larkin's conduct. His family, his wife's family, the Governor, the judiciary and the Commonwealth deserved far more judicious behavior from him.

The appropriate disposition of disciplinary matters of this type depends on the particular circumstances. However, our disposition of other such proceedings may serve as some guide. We are not concerned here with misconduct of a judge in his official capacity. *Matter of De-Saulnier (No. 4)*, 360 Mass. 787 (1972). Nor are we concerned with a wide variety of improprieties, both on and off the bench, occurring over an extended period of time. *Matter of Troy*, 364 Mass. 15 (1973). We have a single, serious error of judgment involving extra-judicial conduct. In a somewhat similar, but not identical, circumstance, we concluded that censure, and not suspension or disbarment, was appropriate. *Matter of Morrissey*, 366 Mass. 11 (1974). There we said that "[w]hen all the facts are brought forward in any situation the court will act decisively, with fairness and, when the circumstances warrant, with compassion." *Id.* at 17. In that situation as well as this, the judge's misconduct brought undeserved discredit to the administration of

justice in the Commonwealth.   In the *Morrissey* matter, however, the violation had occurred prior to the establishment of our Code of Judicial Conduct, and there was no violation of any criminal statute.   Here the judge persisted in trying to make delivery of the $1,000 contribution.   It would have been far better if, from the beginning, he had discouraged the tendering of a gift which only could be regarded by many as a reward for past judicial appointments and an expression of hope for a future one.

Considering all the circumstances, we believe that Judge Larkin should be and he is hereby censured.   In addition, he is ordered to pay the sum of $15,000, as costs in these proceedings, to the Treasurer of the county of Worcester, within ninety days.

*So ordered.*