## IN THE MATTER OF ERNEST B. MURPHY.

Suffolk. June 10, 2008. - December 18, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.[1]

*Judge. Commission on Judicial Conduct.*

A Superior Court judge's actions in writing letters to the publisher of a newspaper in connection with a libel suit brought by the judge against the newspaper violated the Code of Judicial Conduct and warranted a public reprimand, where the letters, which were written on official Superior Court letterhead, contained inappropriate content and tone. [801-803]

FORMAL CHARGES filed in the Supreme Judicial Court on July 10, 2007.

A hearing was held before a hearing officer appointed by this court, a report was submitted by the hearing officer to the Commission on Judicial Conduct, and a report and recommendation for discipline was submitted by the commission to this court.

*Michael E. Mone, Sr.*, for Ernest B. Murphy.

*Howard V. Neff, III*, for Commission on Judicial Conduct.

BY THE COURT. This case is before us for disposition on receipt of a report of the Commission on Judicial Conduct (commission) regarding Superior Court Judge Ernest B. Murphy. The commission initiated a complaint against Judge Murphy on January 10, 2006. The Boston Herald, Inc. (Herald), filed a separate complaint on February 17, 2006. Both complaints concern letters that Judge Murphy wrote to the publisher of the Herald in connection with litigation between Judge Murphy and the Herald. On August 19, 2008, we resolved a subsequent complaint brought by the commission against Judge Murphy by accepting the parties' agreement that, because of his disability, Judge Murphy will never again sit as a judge in Massachusetts.

---

[1]Justice Greaney participated in the deliberation on this case prior to his retirement.

In light of this fact, we conclude that he should be publicly reprimanded and assessed costs for his misconduct in the present case as recommended by the hearing officer.

1. *Procedural background.* After investigating the two complaints concerning the letters, the commission proceeded to a statement of allegations and, after Judge Murphy's response, issued formal charges on June 26, 2007, pursuant to G. L. c. 211C, § 5 (14), and Rule 7(B)(4) of the Rules of the Commission on Judicial Conduct (2008). On July 10, 2007, the commission filed the formal charges and Judge Murphy's answer with this court, and requested the appointment of a hearing officer. We appointed a hearing officer who conducted a formal hearing on the complaints on October 15 and 16, 2007. On November 19, 2007, the hearing officer submitted his report to the commission. On January 8, 2008, the commission held a public hearing on the hearing officer's report. The commission issued its own report and recommendations on March 31, 2008, the commission's report was entered in this court on April 9, 2008, and we held oral argument on the report on June 10, 2008.

2. *Facts.* The commission charged that Judge Murphy violated the Code of Judicial Conduct, S.J.C. Rule 3:09, Canon 1 (A), as appearing in 440 Mass. 1305 (2003); Canon 2 and Canon 2 (A) and (B), as appearing in 440 Mass. 1306 (2003); and Canon 4 (A) and (D), as appearing in 440 Mass. 1323 (2003), by engaging in wilful misconduct that brings the judicial office into disrepute, as well as conduct prejudicial to the administration of justice and unbecoming a judicial officer.

The charges involve two letters Judge Murphy wrote to Patrick J. Purcell, the publisher of the Herald, on official Superior Court letterhead. The letters relate to a libel suit that Judge Murphy brought against the Herald and four of its employees. On February 18, 2005, a jury found in Judge Murphy's favor in that lawsuit, returning a verdict for $2,090,000 (reduced by the trial judge to $2,010,000).[2] Judge Murphy's letters to Purcell were dated February 20, 2005,[3] and March 18, 2005.[4] On

---

[2]This court affirmed the judgment in *Murphy* v. *Boston Herald, Inc.,* 449 Mass. 42 (2007).

[3]A postscript to this letter was dated February 19, 2005.

[4]The letter of February 20, 2005, and its postscript dated February 19, were written on official Superior Court stationery. The letter of March 18, 2005,

December 20, 2005, they were filed in the Superior Court in Suffolk County by the defendants in the libel suit in support of a motion to vacate the judgment. The next day, excerpts from the letters were published in the print edition of the Herald, and full copies of the letters were published in the Herald's online edition.

The commission charges that Judge Murphy used court stationery to write letters, with inappropriate content and tone, to the opposing side in a lawsuit in which he was involved. More specifically, the commission contends that the letters appeared to demand in settlement a premium on the jury verdict; appeared to give a legal opinion about the Herald's chance of success on appeal and to suggest that Judge Murphy had special insight and influence into the court system; urged Purcell to keep the Herald's regular lawyers in the dark about the letters; threatened Purcell and the Herald; and urged Purcell not to appeal from the jury verdict.

The hearing officer found that in sending the two letters Judge Murphy violated Canon 1 (A)[5]; Canon 2[6]; Canon 2 (A)[7];

---

was written on plain stationery but enclosed in an official Superior Court stationery envelope. The letter of February 20, 2005, which Judge Murphy characterizes as a settlement discussion, proposes a meeting between the judge and Patrick J. Purcell. The letter tells Purcell to "have *one* person . . . at the meeting. . . . Under *no* circumstances should you involve [counsel in the lawsuit] in this meeting. . . . You will bring to that meeting a cashier's check, payable to me, in the sum of $3,260,000. No check, no meeting." In the postscript, the judge writes that it would be "a mistake . . . to show this letter to anyone other than the gentleman whose authorized signature will be affixed to the check in question. In fact, a *BIG* mistake." The letter of March 18, 2005, states, "[Y]ou have a *ZERO* chance of reversing my jury verdict on appeal. Anyone who is counselling you to the contrary . . . is *WRONG*. Not 5% . . . *ZERO*. AND . . . I will *NEVER*, that is as in *NEVER*, shave a dime from what you owe me. . . ." (Emphasis in original.)

[5]Canon 1 (A) of the Code of Judicial Conduct (Code), as appearing in 440 Mass. 1305 (2003), provides:

"An independent and honorable judiciary is indispensable to justice in our society. A judge shall participate in establishing, maintaining, and enforcing high standards of conduct and shall personally observe those standards, so that the integrity and independence of the judiciary will be preserved. The provisions of this Code are to be construed and applied to further that objective."

[6]Canon 2 of the Code, as appearing in 440 Mass. 1306 (2003), reads: "A

and so much of Canon 2 (B) as forbids the lending of the prestige of his office to advance his own interests.[8] He found that although as a litigant, a judge's sending letters in the context of litigation was not itself improper, the content and tone of the letters sent by Judge Murphy were inappropriate.

With respect to the use of official Superior Court stationery, the hearing officer found that when he sent the letters, Judge Murphy was not aware that the Code contained an express prohibition against use of judicial stationery, and that the judge did not intend to inject his judicial position into his communications.

The hearing officer found that it was improper for Judge Murphy to attempt to freeze the Herald's counsel out of the picture. He further found that it was unreasonable for Judge Murphy to believe that the letters were confidential private communications, and imprudent for Judge Murphy to send the letters to the publisher of a major metropolitan newspaper, because of the manifest possibility that they would achieve widespread circulation.

The hearing officer determined that the judge did not violate the provision in Canon 4 (A) (1), requiring that extrajudicial activities not cast doubt on a judge's impartiality, because the letters did not suggest that the judge would act with bias or prejudice in his judicial capacity.[9] He found no violation of

---

judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities."

[7]Canon 2 (A) of the Code reads: "A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

[8]Canon 2 (B) of the Code provides as follows:

> "A judge shall not allow family, social, political, or other relationships to influence the judge's judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge. A judge shall not testify voluntarily as a character witness in an adjudicatory proceeding."

[9]Canon 4 (A) (1) of the Code, as appearing in 440 Mass. 1323 (2003), reads:

> "*Extrajudicial Activities in General.* A judge shall conduct all of the judge's extrajudicial activities so that they do not: (1) cast reasonable doubt on the judge's capacity to act impartially as a judge . . . ."

Canon 4 (D) (1)'s prohibition on financial and business dealings that reflect adversely on the judge's impartiality, because the lawsuit was not a financial or business dealing within the meaning of the section.[10] Finally, the hearing officer concluded that although Judge Murphy had engaged in conduct prejudicial to the administration of justice and unbecoming a judicial officer in violation of G. L. c. 211C, § 2 (5) (d), his conduct was not wilful misconduct under G. L. c. 211C, § 2 (5) (c).[11]

In his report, the hearing officer recommended that Judge Murphy be publicly reprimanded and assessed the costs and expenses of the commission during the formal hearing.

Reviewing the hearing officer's report, the commission agreed that Judge Murphy had violated Canon 1 (A), Canon 2, and Canon 2 (A) and (B), and that he had not violated Canon 4 (A) (1). In contrast to the hearing officer, however, the commission determined that Judge Murphy's pursuit of a settlement in his lawsuit was a financial dealing as defined in Canon 4 (D) (1), and that by writing the letters Judge Murphy violated that section's prohibition on "financial and business dealings . . . that may interfere with the proper performance of the judge's judicial position [or] that may reasonably be perceived to exploit the judge's judicial position." Also, contrary to the hearing officer, the commission found that by using court stationery for

---

[10]Canon 4 (D) (1) of the Code, as appearing in 440 Mass. 1323 (2003), reads:

"Financial Activities.

"(1) A judge shall refrain from financial and business dealings that tend to reflect adversely on the judge's impartiality, that may interfere with the proper performance of the judge's judicial position, that may reasonably be perceived to exploit the judge's judicial position, or that may involve the judge in frequent transactions or continuing business relationships with those lawyers or other persons likely to come before the court on which the judge serves."

[11]General Laws c. 211C, § 2 (5) (c) and (d), provide as follows:

"(5) Grounds for discipline shall include: . . . (c) willful misconduct which, although not related to judicial duties, brings the judicial office into disrepute; (d) conduct prejudicial to the administration of justice or conduct unbecoming a judicial officer, whether conduct in office or outside of judicial duties, that brings the judicial office into disrepute . . . ."

personal business, the judge improperly intended to inject his judicial position into his communications with Purcell in violation of Canon 2 (B). Further differing with the hearing officer, the commission found that Judge Murphy's decision to use official court stationery, engaging in the reflection and contemplation involved in the act of letter writing, and writing letters with improper content and tone constituted wilful misconduct in violation of G. L. c. 211C, § 2 (5) (c).

The commission recommended that Judge Murphy be publicly censured, suspended without pay for thirty days, and assessed a fine of $25,000 and the costs incurred by the commission in connection with the matter.

3. *Discussion.* The commission must prove its charges by clear and convincing evidence. G. L. c. 211C, § 7 (4). We agree with the commission and the hearing officer that there is such evidence that Judge Murphy violated Canon 1 (A), Canon 2, and Canon 2 (A) and (B) of the Code of Judicial Conduct. In sending the letters, Judge Murphy failed to uphold high standards of conduct so that the integrity of the judiciary may be preserved; failed to avoid impropriety and the appearance of impropriety; failed to act in a manner that promoted public confidence in the integrity and impartiality of the judiciary; and lent the prestige of judicial office for the advancement of the private interests of the judge, in violation of the canons just referenced.

It is beyond serious dispute that the letters sent by Judge Murphy do not promote public confidence in the judiciary. Judge Murphy concedes that he should not have used judicial letterhead. But more than stationery is at issue here. Although a judge is not prohibited from communications related to personal litigation, including those in pursuit of settlement, permissible communications must reflect the standards required to be followed by a judge both on and off the bench.

"That the standards imposed on judges are high goes without saying. Because of the great power and responsibility judges have in passing judgment on their fellow citizens, such standards are desirable and necessary and there should be strict adherence to them. Failure on the part of even a few judges to comply with these standards serves to degrade and demean the entire judiciary and to erode public confidence in the judicial process."

*Matter of Morrissey*, 366 Mass. 11, 16-17 (1974). In sending the letters at issue, Judge Murphy did not meet the high standards required of judges.

The first letter told Purcell not to bring the Herald's counsel in the libel suit to the proposed meeting and not to tell that counsel about the meeting.[12] The second letter stated repeatedly and emphatically that the Herald had no chance of prevailing on appeal. To a reasonable person, this content, combined with the emphasis and the language selected by the judge, could be viewed as an attempt by a judge to exert inappropriate pressure.[13] For a sitting judge to state with repeated emphasis that he knows with complete certainty what will happen in a case is a misuse of the power and prestige of judicial office; the judge's use of an official court stationery envelope to mail the message exacerbated the misuse. Viewed as a whole, considering content and tone, the judge's two letters plainly crossed the line between permissible and inappropriate communication. "A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on the judge's conduct that might be viewed as burdensome by the ordinary citizen." S.J.C. Rule 3:09, Commentary to Canon 2 (A), as appearing in 440 Mass. 1306 (2003).

The judge contends that the communications were intended to be private. We agree with the commission and the hearing officer that any belief by the judge that the letters would be confidential was unreasonable. Further, even apart from their publication, the mere sending of letters with such content and tone fails to uphold the standard required of a judge.

The judge argues that in finding wilful misconduct, the com-

[12]The letter suggests that Purcell bring a lawyer from the Herald's insurer to the proposed meeting. It is not the judge's role to select his opponent's counsel.

[13]Both the hearing officer and the Commission on Judicial Conduct found that Purcell did not feel threatened or intimidated by the letters. However, as stated by the hearing officer, the impact on Purcell is not determinative. "The test for imposition of sanction for violation of this Canon is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." S.J.C. Rule 3:09, Commentary to Canon 2 (A), as appearing in 440 Mass. 1306 (2003).

mission improperly substituted its judgment for that of the hearing officer who found that Judge Murphy had not engaged in wilful misconduct. We do not find it necessary to reach this issue, or to resolve the other differences between the commission and judge, because these determinations would make no difference in the sanction we impose. In the circumstances of this case, we conclude that a public reprimand is the appropriate sanction. See *Matter of Larkin*, 368 Mass. 87, 91 (1975) ("The appropriate disposition of disciplinary matters of this type depends on the particular circumstances").

On August 19, 2008, this court entered an order in a different matter before the commission regarding Judge Murphy. In that matter (SJC-10249), the parties filed a final submission upon agreed facts pursuant to G. L. c. 211C and Rule 13(A) of the Rules of the Commission on Judicial Conduct (2008). On review of the parties' submission and the accompanying record, including medical reports and other material, we accepted the parties' agreed-on stipulation that Judge Murphy is permanently disabled from performing his duties as a judge and their further stipulation that Judge Murphy hereafter shall not sit as a judge in Massachusetts. The court's August 19 order reflects this determination. Moreover, we take into account that Judge Murphy's conduct, although inappropriate, was extrajudicial; it did not involve dishonesty, corruption, or illegality; and both the commission and hearing officer found that the judge and his family were under very substantial stress because of the articles in the Herald and their aftermath.

4. *Conclusion.* The considerations just discussed, in combination, persuade us to impose a public reprimand on Judge Murphy in this instance. Judge Murphy should be and is hereby publicly reprimanded. Further, he is ordered to pay to the Treasurer of the Commonwealth within ninety days the costs in these proceedings.[14]

*So ordered.*

---

[14]Because Judge Murphy does not object to the sanction of public reprimand, our disposition makes moot the judge's motion to recommit. We take no action on the motion.