IN THE MATTER OF SZYMANSKI

Docket No. 57994. Argued June 8, 1977 (Calendar No. 16).—Decided
July 11, 1977. Opinions filed July 12, 1977.

The Judicial Tenure Commission recommended that the Supreme
Court publicly censure Frank S. Szymanski, a Wayne County
Probate Judge, for conduct which included taking part in
discussions of a plan to obtain liquor licenses through the
payment of money to an unnamed person. The Court of Ap-
peals, McGregor, P. J., and Quinn and O'Hara, JJ., had re-
versed his conviction of conspiracy to bribe, *People v Szyman-
ski,* 59 Mich App 661; 230 NW2d 17 (1975); however, the
Judicial Tenure Commission found that the respondent's con-
duct was prejudicial to the administration of justice and recom-
mended public censure. Respondent appeals. *Held:*

There is not a majority of the Justices to adopt the recom-
mendation of the commission.

Justice Levin, concurring in rejection of the recommended
order of censure, agreed with the master that a preponderance
of the evidence does not support a finding that Judge Szyman-
ski was or should have been aware of any impropriety or
illegality in the transaction. While the Judicial Tenure Com-
mission would have been justified in privately admonishing
Judge Szymanski because he apparently sought to facilitate the
transaction and allowed his status as a judge to be exploited to
advance private business interests, discipline is not warranted
for an isolated, atypical transaction.

Case dismissed.

Justice Williams did not participate.

*Brian J. McMahon,* Executive Director and Gen-
eral Counsel, *Stanley T. Dobry,* Staff Attorney, and
*Joseph F. Regnier,* Special Examiner, for the Judi-
cial Tenure Commission.

*Eli Friedman* and *Myron Alpert* for respondent.

PER CURIAM. This is an appeal by respondent

from an order of the Michigan Judicial Tenure Commission recommending public censure on account of respondent's activities as detailed in *People v Szymanski,* 59 Mich App 661; 230 NW2d 17 (1975), *leave denied* 394 Mich 798 (1975).

The reasons for the commission's recommendation are set forth in its decision which says in part:

"The hearing on this complaint was referred by the Supreme Court to the Honorable Bernard H. Davidson, Circuit Judge, as master, pursuant to GCR 1963, 932.10(b). Thereafter the master filed his report and objections thereto were submitted by the examiner, pursuant to GCR 1963, 932.17. The matter came on for hearing before the commission on January 31, 1977.

"The examiner presented oral argument at that hearing as did counsel for the respondent.

"Upon a review of the full record herein and upon consideration of argument of counsel, it is the conclusion of a majority of the commission that, with respect to paragraph 3 of Formal Complaint No. 15, which dealt with respondent's relationship with Louis Pappas, the master's findings should be, and the same are hereby adopted and confirmed.

"The balance of Formal Complaint No. 15 concerned respondent's presence at three luncheons in 1971, at which the two other men present discussed a plan to obtain some 70 liquor licenses through the payment of money to a third, unnamed individual. Respondent took part in these discussions and offered his assistance as a kind of 'escrowee' to overcome the mutual distrust evidenced by the parties to the negotiations.

\* \* \*

"While recognizing that respondent's conduct has been found not to be criminal, nevertheless, the commission has a separate obligation to determine the propriety of that conduct and its likely effect upon respect for the judicial office and upon the administration of justice.

"There is essentially no dispute of fact as to what was

said or done in the course of those three luncheons. The master found with respect to those meetings that there was no judicial misconduct and no conduct prejudicial to the administration of justice. A majority of the commission disagrees with this conclusion.

"It is apparent from a reading of the testimony and the exhibits, and it should have been apparent to respondent at the time, that the arrangement under discussion was not a regular, legitimate business proposal. The transcripts of the luncheons are replete with references and innuendoes which would alert any person of normal intelligence and acuity to the unsavory nature and purpose of the meetings. Respondent's inability or unwillingness to discern this at the first meeting, and his participation in two subsequent meetings, reflected an unacceptable insensitivity to the responsibilities of his office. We find that such conduct was clearly prejudicial to the administration of justice.

\* \* \*

"In light of the foregoing it is the recommendation of a majority of the commission that respondent be publicly censured and that an order to that effect be entered by the Michigan Supreme Court."

The responsibility of the commission to determine the propriety of a judge's conduct and its likely effect upon the respect for the judicial office and upon the administration of justice is acknowledged.

There are three of us who agree with the majority of the commission that respondent's conduct warrants public censure.

There are three of us who agree with the master that it was not established that respondent violated any law or that his conduct was such as to warrant public censure.

There being no majority to adopt the recommendation of the commission the case is dismissed.

To Reject the Recommendation of the Commission:

> KAVANAGH, C. J.,
> LEVIN,
> FITZGERALD, JJ.

To Adopt the Recommendation of the Commission:

> COLEMAN,
> RYAN,
> BLAIR MOODY, JR., JJ.

WILLIAMS, J., took no part in the decision of this case.

LEVIN, J. *(concurring in rejection of recommendation)*. I agree with the master[1] that a preponderance of the evidence does not support a finding that Judge Szymanski was or should have been

---

[1] The master, in his report, said in part:

"It is not claimed by the commission, nor can it be, that the respondent's conduct was illegal or criminal since he has been absolved of any criminal liability. * * * It is claimed, however, in paragraph 4 of the complaint that at the three luncheon meetings of June 9, July 13 and August 18, 1971, there were discussions of a wrongful, improper, immoral and unethical scheme to obtain liquor licenses from the [Liquor Control Commission]; that the respondent did participate in these discussions; knew the purpose and nature of same to be improper, immoral and unethical and that he did counsel and advise Pappas and Renkoski, and did offer to assist them in the implementation of the scheme, knowing the same to be wrongful, improper, immoral and unethical. 'Scheme' is defined in the Random House Dictionary of the English Language as: 'a plan, design or program of action to be followed.' While Renkoski and Pappas were engaged in planning to obtain liquor licenses for clients of Pappas, the weight of evidence does not, in my opinion, establish that their activities were wrongful, improper, immoral or unethical. While the conversations and the tapes, plus Renkoski's testimony, are open to interpretation that someone was being bribed, it is equally open to interpretation that Renkoski was being paid for the services of himself and his contact to process and obtain liquor licenses. * * * The respondent's participation in the discussions and advice and guarantee can be construed as violative of the Canons of Judicial Ethics and GCR 1963, 932 only if the negotiations between Pappas and Renkoski are construed as wrongful, improper, immoral and unethical. I do not find by the preponderance of evidence that it was."

aware of any impropriety or illegality in the Pappas-Renkoski transaction.

It appears, however, that Judge Szymanski sought to facilitate that transaction and allowed his status as a judge to be exploited to advance private business interests. This was inappropriate and violative of the Code of Judicial Conduct, Canon 5(C)(1).

It does not appear, however, that this was a continuing course of conduct or other than an isolated, atypical transaction.[2] While the Judicial

---

[2] GCR 1963, 932.4(d) provides that conduct in violation of the Code of Judicial Conduct "may constitute" cause delineated in Const 1963, art 6, § 30 for judicial discipline, but that violation of the Code does not necessarily require the imposition of discipline:

"The question in every case is whether the conduct complained of constitutes misconduct in office or conduct that is clearly prejudicial to the administration of justice or there is other cause delineated in Const 1963, art 6, § 30, not whether a particular canon or disciplinary rule has been violated. All the circumstances are to be considered in deciding whether action by the commission is warranted."

It is not the practice of the tenure commission to issue a formal complaint for every violation of the Code of Judicial Conduct brought to its attention. Instances of judicial intemperance on or off the bench or lethargy in performance of judicial duties are, for example, ordinarily dealt with by private admonition that the judge must conform his behavior to the standard of the code and that continuing nonconformance will result in the issuance of a formal complaint.

An isolated instance of allowing one's status as a judge to be exploited by another person is of the same order of magnitude as the kind of conduct which does not ordinarily occasion a formal complaint.

*See, also,* the draft Standards of Judicial Discipline prepared by the American Bar Association Joint Committee on Professional Discipline, which provide that a state's judicial inquiry/discipline/tenure commission may, in lieu of filing a formal complaint, issue a private reprimand or dispose of the complaint by informal adjustment, including informing or admonishing a judge that his conduct is or may be cause for discipline:

*"Dispositions.* The commission may make any of the following dispositions:

"(a) An unjustified or unfounded complaint may be privately dismissed by the commission without giving notice to the judge.

"(b) The commission may issue a private reprimand.

"(c) The commission may by informal adjustment dispose of a complaint by:

Tenure Commission would have been justified in privately admonishing Judge Szymanski, discipline is not warranted and accordingly I join in rejecting the recommended order of censure.

---

"(1) Informing or admonishing the judge that his conduct is or may be cause for discipline;

"(2) Directing professional counseling and assistance for the judge; or

"(3) Imposing conditions on a judge's conduct." American Bar Association, Joint Committee on Professional Discipline, proposed Standards of Judicial Discipline, § 6.6.