IN THE MATTER OF MICHAEL J. DONOHUE.

Suffolk. August 15, 1983. — December 5, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Judge.*

Evidence in a formal proceeding against a judge warranted conclusions by the Commission on Judicial Conduct that six specific charges had been proved that the judge had violated the Code of Judicial Conduct, Canon 2 (requiring a judge to "[a]void [i]mpropriety") and 2 (A) (requiring him to "respect and comply with the law"), and also warranted the commission's further conclusions that the six charges showed a pattern of conduct, indicated wilful disregard of the law and not mere error of law, and constituted misconduct. [518]

In a formal proceeding against a judge, evidence that the judge had used injudicious language on the bench; that he was abusive or discourteous toward attorneys, court employees, witnesses, and litigants; and that he prevented the first assistant clerk of his court from performing the duties of his position warranted the Commission on Judicial Conduct in concluding that three charges had been· proved that the judge had violated the Code of Judicial Conduct, Canon 3 (A) (3), requiring that a judge be "patient, dignified, and courteous." [518-519]

Upon consideration of all of the relevant facts, this court publicly censured a judge for violations of Canons 2, 2 (A), and 3 (A) (3) of the Code of Judicial Conduct. [519-522] NOLAN, J., with whom LYNCH, J., joined, dissenting.

PROCEEDING in relation to an inquiry concerning a judge, commenced in this court on June 21, 1983.

The case was submitted on briefs.

*Arthur D. Serota* for the respondent.

*John O. Mirick,* Special Counsel, for Commission on Judicial Conduct.

BY THE COURT. This case is before the court on the recommendation of the Commission on Judicial Conduct (commission) that District Court Judge Michael J. Donohue be disciplined for misconduct.

The matter began in June, 1981, when a complaint against Judge Donohue was filed with the commission by an attorney. In accordance with the rules of the commission, Judge Donohue was sent a copy of the complaint, to which he responded by letter. On September 17, 1981, the commission voted to conduct an investigation and on November 6, 1981, this court appointed special counsel to investigate the matter.

After investigation, the commission voted to institute formal proceedings. A notice of the specific charges against Judge Donohue was served on him and he filed an answer to the charges. At the request of the commission, this court appointed a hearing officer who, after hearings held in February, 1983, submitted a report to the commission on April 5, 1983. In June, 1983, the commission filed its report and recommendations with the court. Judge Donohue and the commission were given the option of presenting written or oral argument to the court. A memorandum was filed by counsel for Judge Donohue and the judge also submitted a letter with attached background information. A brief on behalf of the commission was filed by special counsel. We have before us the report and recommendations of the commission, the attached exhibits (which include the complaint, the judge's answer, and the report of the hearing officer), the transcript of the hearing, and the parties submissions to this court.

The commission's complaint charges Judge Donohue with violating S.J.C. Rule 3:09, Canons 2, 2 (A), and 3 (A) (3) of the Code of Judicial Conduct, as appearing in 382 Mass. 808 (1981),[1] in incidents occurring between 1975 and 1982.

---

[1] Canon 2 and 2 (A) read: "A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities.

"(A) A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

Canon 3 (A) (3) reads: "A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, and should require similar conduct of lawyers, and of his staff, court officials, and others subject to his direction and control."

Charges 1(a)-1(n) allege fourteen violations of Canon 2 and 2 (A) involving the imposition of bail and peace bonds, the issuance of support orders and the disposition of other specified matters, the commencement of criminal matters in the absence of the prosecutor, and the refusal to allow the police department access to the secure entrance to the courthouse. Charges 2(a)-2(d) allege four violations of Canon 3 (A) (3): two charges relating to Judge Donohue's treatment of a court employee, one charge of misconduct in responding to requests for continuances, and one charge that the judge verbally abused attorneys, litigants, and witnesses on various occasions.

From the total of eighteen charges, the hearing officer found that two charges relating to misconduct in the imposition of bail had been proved,[2] finding that in one case Judge Donohue had imposed excessive bail and in the other he had increased bail after a defendant had been found guilty and taken an appeal. He also found the two charges alleging mistreatment of a court employee had been proved in that the judge had denied the employee the right to function in his duly appointed office and had subjected him to public embarrassment on two occasions. In addition, the hearing officer found that the charge alleging that Judge Donohue had verbally abused lawyers, litigants, witnesses, and others had been proved. With one exception,[3] he concluded that the remaining charges should be dismissed, finding that the matters alleged were not established, or, if established, should not be the subject of disciplinary proceedings. With respect to several charges, the hearing officer noted that the incidents had occurred more than one year prior to the date

[2] The hearing officer found that charge 1(e) had been proved and, together with charge 1(a), gave rise to a pattern of misconduct involving the imposition of increased bail after appeal.

[3] The hearing officer made no finding with respect to charge 1(i). The report of the hearing officer is organized to correspond to each numbered allegation in the order that it appears in the complaint. Possibly through an oversight, paragraph 1(i) of the hearing officer's report does not correspond to the complaint, and the designations of the subsequent paragraphs in the report are also mismatched.

of the complaint, and thus were not within the jurisdiction of the commission. G. L. c. 211C, § 2.

In his report the hearing officer recommended that Judge Donohue be reprimanded for misconduct and that he be assigned to other District Courts two days each week for a period of two years.

The commission adopted in whole the summary of evidence and subsidiary findings of fact made by the hearing officer, but drew different conclusions from the evidence on certain charges. In addition to the five charges which the hearing officer found were proved, the commission found that four other charges had also been established. The commission found that the two charges alleging that Judge Donohue imposed peace bonds after guilty findings had been proved, and that such practice by the judge was part of the same pattern of judicial misconduct exhibited in the charges involving bail. The commission also found that charge 1(i), alleging that Judge Donohue directed the initiation of probation violation proceedings in a case in which he knew that probation had been terminated and the defendant discharged, had been proved.[4] Finally, the commission found that the charge that the judge entered a temporary order of support requiring a defendant to contribute to the support of a child fathered by another man had been proved. The commission stated that the judge's entry of the order under G. L. c. 209A, had occurred after the practice had been specifically disapproved by a single justice of this court in cases arising under G. L. c. 273, and that such action by Judge Donohue constituted judicial misconduct. In sum, the commission concluded that six charges of misconduct under Canon 2 and 2 (A) had been proved, and three charges of misconduct under Canon 3 (A) (3) had been proved.

---

[4] As stated in note 3, *supra,* the hearing officer made no finding with respect to this charge. In making its own finding, the commission reviewed the transcript of the testimony relative to this charge and the answer of Judge Donohue in which he admits that he "ordered the matter to proceed as if the matter had not been discharged." In his answer and in the brief submitted on his behalf, Judge Donohue states that the case had been discharged without the authority of the court and had never been submitted to the court on the day it was supposedly discharged.

We agree that the evidence before the hearing officer as to Canon 2 and 2 (A) warranted his findings of fact, and that the commission in turn, having accepted the hearing officer's findings, was warranted in its conclusions that six specific charges of misconduct under Canon 2 and 2 (A) had been proved. Canon 2 and 2 (A) require a judge to "[a]void [i]mpropriety," and "respect and comply with the law." The commission was warranted in concluding that six charges showed a pattern of conduct, showed wilful disregard of the law and not mere error of law, and constituted misconduct. As seen in *Matter of Scott*, 377 Mass. 364, 368 (1979), where a judge over a protracted period of time has followed a course of judicial conduct which was without justification in law, this court is prepared to deal with the situation under its inherent and statutory power to discipline judges. See *Matter of Troy*, 364 Mass. 15, 40-41 (1973).

Both the hearing officer and the commission found that three charges alleging that Judge Donohue violated Canon 3 (A) (3) have been proved. Canon 3 (A) (3) requires a judge to be "patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity." We agree that the findings of the hearing officer and the conclusions of the commission were warranted on the evidence and that the three proven charges constituted misconduct by the judge. Thus there was evidence that Judge Donohue used injudicious language on the bench, that he was abusive toward attorneys, court employees, and litigants, that he prevented the first assistant clerk from performing the duties of his position and has, in public, curtly dismissed him from the courtroom, and that there were instances of discourtesy or abuse toward the prosecutor, the clerk, witnesses, and various attorneys.

Judge Donohue's public use of intemperate language and his injudicious manner demonstrate a violation of the requirements of Canon 3 (A) (3). The Code of Judicial Conduct requires judges in this Commonwealth to exhibit the highest standards of professional conduct. The evidence supports the conclusion that, in addition to degrading the

office held by Judge Donohue, his conduct was demeaning to the judicial office in general.

It is clear that the evidence warranted the hearing officer's findings, in substance, that some of those persons who testified against Judge Donohue in these proceedings had engaged in improprieties in their conduct and demeanor toward the judge.[5] However, in its report and recommendations, the commission rejected the hearing officer's conclusion that the judge's behavior was mitigated because it was provoked by attorneys, litigants, or courtroom personnel. We agree with the commission that such action on the part of others in no way excuses or justifies the judge's conduct. It may be relevant, however, in determining the proper disposition of this matter. "In deciding the appropriate disposition in any judicial discipline case, we must also consider any mitigating circumstances." *Matter of Killam*, 388 Mass. 619, 624 (1983).

Both the commission and the hearing officer agree that a great deal of tension exists between Judge Donohue and at least a few lawyers who appear regularly in the Holyoke Division of the District Court. A strained relationship was also found to exist between the judge and his first assistant clerk. Indeed, the record shows a number of personality conflicts between the judge and these individuals. In view of this situation, for purposes of disposition, we consider the following circumstances described in the findings of the hearing officer which were adopted by the commission.

In discussing the charges involving Judge Donohue's refusal to allow the first assistant clerk (Mr. McLean) to appear in his courtroom and his discourteous behavior toward Mr. McLean, the hearing officer found that after a lengthy, good relationship during which Judge Donohue had assisted Mr. McLean on various occasions, Judge Donohue denied

---

[5] We express no admiration for this conduct, but we make no further comment upon the subject because we do not wish to risk any implication from our language that would serve in the future to discourage attorneys from coming forward to give evidence in matters concerning judicial discipline.

two requests that Mr. McLean be designated as an assistant magistrate. Sometime later, Mr. McLean refused to comply with Judge Donohue's instructions that he have printed certain materials to be used at the dedication of a new courthouse. This confrontation resulted in the judge's refusal to work with Mr. McLean. The hearing officer also found that on one occasion Mr. McLean confronted Judge Donohue "in a baiting manner," and the hearing officer concluded that their relationship is "obviously strained, possibly justified but regrettable." The answer filed by counsel for the judge states that the judge regrets any statements made to the first assistant clerk which may be perceived as being discourteous.

With respect to the charge that the judge has been verbally abusive to attorneys, litigants, witnesses, and others who appear before him, the hearing officer found that on each occasion that the judge had been discourteous or abusive he was motivated by some action or inaction by those provoking the comment. He also found that, with respect to the two most serious incidents of abuse, the judge voluntarily apologized in open court or granted a new trial. In his answer to the charge, the judge states that he has not been motivated to be verbally abusive and regrets any perceptions of such occurrences as may exist.

Other mitigating facts, as found by the hearing officer, which are relevant to the disposition of this matter are the positive contributions made by Judge Donohue to the courts and the community. See *Matter of McKenney*, 384 Mass. 76, 88 (1981). The hearing officer, in emphasizing the importance of the positive contribution of the judge to his community, in his long service (since 1963) as presiding justice of the Holyoke Division of the District Court, summarized the facts as follows.

"[The judge] has been involved with numerous community programs for the benefit of young people, minority groups and the disadvantaged. As a Judge, Respondent has initiated programs for juveniles, the unemployed, those found guilty of crimes and those in conflict with authority. In Court, Respondent has demonstrated a proven record of protecting the rights of defendants who appear before him.

"Respondent enjoys an excellent reputation among Judges in other states through his involvement in several nationally known Judges' Associations and in Massachusetts as a result of his leadership in forming the Massachusetts Judges Association which is now known as The Massachusetts Judges Conference.

". . . .

"Both Chief Justice Zoll and [Regional] Administrative Judge Turcotte confirm that Respondent is an excellent administrator in his position as Presiding Justice of the Holyoke District Court."

The commission recommends that this court impose a public censure upon Judge Donohue.[6]  Also, because the commission concluded that problems which exist when Judge Donohue sits in his own court do not appear to exist when he sits elsewhere, the commission recommends to this court that Judge Donohue not be permitted to sit on judicial matters, or participate in judicial matters, in the Holyoke Division of the District Court for a period of two years, and that he be permitted to sit in that court no more than two days a week during a third, transitional, year, before returning to his full duties in that court.  In addition, the commission recommends that, in light of Judge Donohue's reputation as a skilled and efficient administrator of the Holyoke Division of the District Court, he be permitted, not inconsistent with the other terms of the commission's recommendation, to continue to carry out his administrative duties in that court.

---

[6] The hearing officer recommended a "reprimand," and the commission also used the term "censure."  The difference in terminology is not important.  "The Committee has discussed in its 'Recommendation' whether the proper sanction to be applied is public reprimand or public censure.  We have used the terminology of public censure in prior cases of judicial misconduct (see *Matter of Larkin*, 368 Mass. 87 [1975]; *Matter of Morrissey*, 366 Mass. 11 [1974]), but the choice of one form of words rather than another to express a result is not important, nor does it carry any special significance.  What is important is that this court publicly reprehends [the judge's] behavior and will not tolerate any repetition." *Matter of Scott*, 377 Mass. 364, 369 (1979).

We have considered all relevant factors. We regard the several instances in which Judge Donohue wilfully disregarded the applicable law as more serious than the improprieties shown in his treatment of an assistant clerk and a limited number of attorneys. This is particularly so in light of the personality clashes demonstrated between the judge and these individuals. We have considered the substantial mitigating factors, as shown above, and also that this case does not equate in seriousness with any of the cases cited in this opinion.

We have read with respect the recommendation of the commission that Judge Donohue not sit in the Holyoke Division of the District Court. Nevertheless, we make no order that the judge shall not sit in that court. We expect no repetition of the kind of conduct that has occurred in the past. We leave to the discretion of the Chief Justice of the District Court Department the question whether, from time to time, the judge should be assigned to sit in other courts.

In accordance with the commission's recommendation, we impose a public censure upon Judge Donohue.

*So ordered.*

NOLAN, J. (dissenting, with whom Lynch, J., joins). I dissent. A private admonition would have been sufficient because Judge Donohue's conduct was substantially less egregious than the conduct of other judges on whom we have imposed a public censure. The provocation by members of the bar for some of his censured conduct was most unseemly though he cannot escape without some blame for his responses. In my opinion, his years of devoted service to the court and to his community deserve more consideration than they have been given.