530 So.2d 175 (1988)
In re Inquiry Concerning Justice Court Judge George W. MULLEN.
No. 58595.
Supreme Court of Mississippi.
August 17, 1988.

ORDER
HAWKINS, Presiding Justice.
The Joint Motion of the Mississippi Commission on Judicial Performance and Justice *176 Court Judge George W. Mullen to accept the findings of fact and recommendations for discipline made by the Commission has been examined by Presiding Justice Armis E. Hawkins, Justice J. Ruble Griffin and Justice Joseph S. Zuccaro and found to be in order, the commission's findings and recommendation are accepted by the Court in the form and manner set forth therein, a copy of which is attached hereto.
It is, therefore, ordered that the Joint Motion for Approval of Recommendation filed by the Mississippi Commission on Judicial Performance is accepted by the Court, the Commission finding of fact is accepted by the Court, and the respondent judge, George W. Mullen, Justice Court Judge, District One, Simpson County, Mississippi, is hereby publicly censured, fined Five Hundred Dollars ($500.00) and suspended, without pay, for thirty (30) days pursuant to Section 177A of the Mississippi Constitution of 1890, as amended. It is further ordered that this order, with the findings of fact and recommendation attached thereto, shall be published in the Southern Reporter, Mississippi Cases as an official and permanent censure.

COMMISSION FINDINGS OF FACT AND RECOMMENDATION

INITIATION OF PROCEEDINGS
On January 5, 1987, the Mississippi Commission on Judicial Performance (hereinafter referred to as the "Commission") filed a Formal Complaint charging George W. Mullen, Justice Court Judge for Post One, Simpson County, Mississippi (hereinafter referred to as the "Respondent"), with judicial misconduct constituting a violation of Section 177A, Mississippi Constitution of 1890, as amended.
On February 6, 1987, the Respondent filed an Answer to the Formal Complaint, denying the allegations of judicial misconduct in the Formal Complaint.

HEARING
On June 10, 1987, this cause came on for formal hearing before a duly designated committee of the Commission, consisting of Judge James D. Bell, presiding, Judge Mary T. Foretich and Dr. Cleopatra D. Thompson. The Commission was represented by Luther T. Brantley, III of Jackson; the Respondent was present and represented by W. Terrell Stubbs of Mendenhall.

FINDINGS
Based upon the evidence as adduced at the formal hearing in this Inquiry, the Commission finds the following by clear and convincing evidence, to-wit:
On or about December 11, 1985, Benjie Turnage filed a civil action on behalf of Magee Apartments vs. Annie R. Jones. Jones was served with process and appeared for trial on or about December 19, 1985; Turnage did not appear. Said summons reflected that the suit was for past due rent and eviction. Respondent questioned Jones and ordered her to be out of the apartment by the end of the year. At that time entries were made in the docket and on the case file that Jones was to be out of the apartment by the first of the year; no reference or entry was made regarding a money judgment.
On or about February 25, 1986, Turnage filed a suggestion for garnishment against Jones. While there was conflicting testimony on this point, the Commission finds that the Justice Court Clerk, Lorraine Waltman, and Respondent were both present at the time Turnage filed said suggestion of garnishment. Waltman asked Respondent about issuing the garnishment and he directed her to issue it. It was thereafter issued and served upon Jones' employer.
On or about March 26, 1986, Suzanne Griggins, a Mendenhall attorney, contacted Respondent regarding the garnishment. Respondent told Griggins he new nothing about the garnishment and that no money judgment had been entered. The Court records, including the docket and the case file, reflected no money judgment entered against Jones. Respondent, on or about March 26, 1986, wrote a letter to Jones' employer to stop the garnishment. Thereafter, on March 31, 1986, without notice to *177 Griggins or Jones, the garnishment was reinstated.
A few weeks later, Griggins returned to the Justice Court office regarding the reinstated garnishment. Respondent called Justice Court Clerk Waltman into his office, where Respondent again stated no money judgment had been entered. Then, everyone left the room except Griggins. Respondent went to the docket book and found Waltman and Owens examining the book. Waltman informed Respondent that no money judgment had been entered. Respondent then either ordered Waltman and/or Owens to add a money judgment to the book, or knowingly allowed them to do so. His words were either "Do what you have to do while I keep Suzzy busy," or "Do what you have to do to get it on there while I keep Suzzy busy." Ms. Waltman then asked Ms. Owens to make the entry, because the prior entry was in Owens' handwriting, and a change of handwriting would look funny.
Respondent returned to his office and informed Ms. Griggins that he would stop the garnishment. He asked her to look up the phone number of Ms. Jones' employer.
Ms. Waltman returned to Respondent's office with the docket book. When Ms. Griggins looked at the book, she found a monetary judgment in the amount of $684.00 had been entered. She told Respondent and Ms. Waltman that she knew the book had been altered because she looked at the book in March and was willing to swear that no money judgment had been entered at that time. Respondent testified before the Commission that he did not realize Ms. Griggins had seen the docket book before.
Neither Respondent, nor Ms. Waltman volunteered at that time any information about how or when the entry was made. Ms. Griggins asked who made the entry, and Ms. Waltman told her it was Ms. Owens' handwriting. Ms. Griggins insisted that Ms. Owens be brought in for questioning, and Ms. Owens came to Respondent's office. Ms. Owens agreed that she entered the money judgment. When Griggins asked her when, Owens said "a while back."
Griggins continued to question everyone present about the entry, and Ms. Waltman finally informed her that the entry had been made in the past few minutes, under the direction of Respondent.
Pursuant to the garnishment, Ms. Jones' employer remitted withheld wages to the Justice Court. Respondent returned to Ms. Jones the wages forwarded to the Court.
On or about July 28, 1984, Hartford Financial Services, Inc. filed a replevin action against Gerald H. Harper over a 1981 Honda Three-Wheeler, for past due payments plus court costs in a total amount of less than $300.00. Process was served and Harper took the three-wheeler to the Simpson County Jail. Several days later, Harper went to the justice court office to pay off the three-wheeler. Respondent informed him that Hartford wanted the three-wheeler and that he could not pay it off and get it back. Approximately one week to three weeks thereafter, Respondent called Harper and asked if he wanted to get the three-wheeler back, saying Respondent could get it. Harper did not take any action to get the three-wheeler.
Respondent purchased the three-wheeler himself from Hartford Financial Services for $275.00. He titled the vehicle in his grandson's name. His grandson was two years old at the time. Harper testified that he purchased the three-wheeler for $750 to $800.
After the Commission began its investigation of this matter, Respondent returned the three-wheeler to Harper. Harper paid him $20.00, and agreed to make monthly payments to Respondent. Harper has testified that he has not made any more payments on the three wheeler, and that Respondent asked that the three-wheeler be returned.
Respondent moved that the portion of the complaint dealing with the three-wheeler be dismissed on the grounds that no formal complaint, sworn to by a complainant, was filed, as required by rule 5 D of the Commission.
*178 Rule 5 A permits the Commission on Judicial Performance to make inquiry concerning a judge's conduct on its own motion. While investigating the complaint concerning Ms. Jones and Ms. Griggins, the Commission uncovered evidence concerning the three-wheeler, and on its own motion filed a detailed complaint, without requiring an individual complainant to come forward to sign and swear to the pleadings. It is the opinion of the Commission that it is within the authority of the Commission to initiate complaints in the manner used in this instance. Respondent was fully informed of the charge against him, and no prejudice resulted to Respondent. The motion is therefore denied.
The Commission finds that the action of Respondent in misleading Ms. Griggins concerning the entry of the money judgment on the docket, and in ordering or allowing an improper alteration of the official records of the court damages the integrity of the court in violation of Canon 1 of the Code of Judicial Conduct.
The actions of Respondent in refusing to allow a debtor-defendant to redeem property replevined in his court and then purchasing the property himself at a price which by all appearances is below market value damages the integrity of the judiciary. In so doing, Respondent failed to observe the high standards of conduct required by Canon 1 of the Code of Judicial Conduct.
By altering the docket book, issuing and stopping garnishments randomly, holding ex-parte hearings, misleading the public about the existence of a money judgment which substantially affected the rights of parties involved, refusing to allow a debtor to redeem his replevined property when he was entitled by law to do so, purchasing said property himself, and concealing his purchase by fraudulently placing the title to the property in the name of another person, Respondent failed to comply with the law and failed to conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary, in violation of Canon 2 A of the Code of Judicial Conduct.
Respondent's refusal to allow a debtor to redeem replevined property and purchasing the property himself and placing the title to the property in the name of a family member were actions in which Respondent allowed his personal, family, or other relationships to influence his judicial conduct and judgment, in violation of Canon 2 B of the Code of Judicial Conduct.
The judge's conduct, as aforesaid, demonstrated either an intentional violation of laws, or a failure to maintain professional competence in the law, in violation of Canon 3 A(1) of the Code of Judicial Conduct. His continued issuing of garnishments and stopping garnishments in the Magee Apartments vs. Annie R. Jones case demonstrates that he was swayed by the partisan interest of whoever appeared before him ex-parte, again in violation of Canon 3 A(1) of the Code of Judicial Conduct.
A minority of the members of the committee felt that he was discourteous and undignified to the litigants, in violation of Canon 3 A(3) of the Code of Judicial Conduct.
Respondent failed to afford litigants Magee Apartments, Annie R. Jones, and Gerald R. Harper a full right to be heard, and considered ex-parte communications concerning pending proceedings, in violation of Canon 3 A(4) of the Code of Judicial Conduct.
Respondent failed to discharge his administrative responsibilities by allowing clerks to enter false information into the official court docket, and misleading Ms. Griggins and Benjie Turnage about the existence of a money judgment, in violation of Canon 3 B(1) of the Code of Judicial Conduct.

RECOMMENDATION
The Mississippi Commission on Judicial Performance therefore finds by clear and convincing evidence that the conduct of the Respondent, George W. Mullen, in the case of Magee Apartments vs. Annie R. Jones, constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, as set forth in Section 177A of *179 the Mississippi Constitution of 1890, as amended. The Commission hereby recommends to the Mississippi Supreme Court that for this conduct the Respondent be publicly censured and suspended from office, without pay, for a period of thirty (30) days.
The Commission further finds by clear and convincing evidence that the conduct of the Respondent, George W. Mullen, in the case of the Gerald Harper three-wheeler, constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, as set forth in Section 177A of the Mississippi Constitution of 1890, as amended. The Commission hereby recommends to the Mississippi Supreme Court that for this conduct the Respondent be publicly censured and fined in the amount of $500.00 pursuant to Section 177A of the Mississippi Constitution.
 Respectfully submitted,
 MISSISSIPPI COMMISSION ON
 JUDICIAL PERFORMANCE
 /s/ Kenneth B. Robertson
 Kenneth B. Robertson,
 Chairman
Dated this the 1st day of October, 1987.