535 So.2d 47 (1988)
In re Inquiry Concerning Dennis M. BAKER, Chancellor.
No. 59159.
Supreme Court of Mississippi.
November 23, 1988.
Luther T. Brantley, III, Jackson, for petitioner.
Richard T. Phillips, Smith, Phillips & Mitchell, Batesville, for respondent.
Before ROY NOBLE LEE, C.J., and PRATHER and GRIFFIN, JJ.
GRIFFIN, Justice, for the Court:
On January 13, 1987, the Mississippi Commission on Judicial Performance (Commission) filed a formal complaint charging Dennis M. Baker, Chancellor, Place 1, Third Chancery District of Mississippi, with judicial misconduct in violation of § 177A, Mississippi Constitution of 1890, as amended. The Comission found by clear and convincing evidence that Judge Baker had violated Canons 1, 2 A, 2 B and 7 B(1)(a) of the Code of Judicial Conduct of Mississippi Judges. These canons state:
CANON 1
A Judge Should Uphold the Integrity and Independence of the Judiciary.
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.
CANON 2
A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities.
(A) A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
(B) A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.

*48 CANON 7
A Judge Should Refrain from Political Activity Inappropriate to His Judicial Office.
B. Campaign Conduct.
(1) A candidate, including an incumbent judge, for a judicial office that is filled either by public election between competing candidates or on the basis of a merit system election;
(a) should maintain the dignity appropriate to judicial office, and should encourage members of his family to adhere to the same standards of political conduct that apply to him; ...
The Commission issued its "Commission's Findings of Fact and Recommendations" on March 11, 1988, recommending a public reprimand. While this Court commends the Commission for its diligence, we find that this case does not compel public reprimand.
The background of the charge against Judge Baker is long and arduous. Judge Baker was accused of wrongdoing by an attorney, Christian Goeldner. Goeldner was suspended from the practice of law for two years as a result of Judge Baker's report of unethical activities. Goeldner v. Miss. State Bar Ass'n., 525 So.2d 403 (Miss. 1988).
These charges against Goeldner arose in 1984, from a bill submitted to the Conservator of Ms. Florence Middleton. Chancellor Baker did not allow the hourly fee originally charged by Goeldner. A subsequent bill showed "padded" hours at the lower fee which resulted in approximately the same charge.
Christian Goeldner's trial before the Tribunal for the Central Supreme Court District was held on April 10, 1986. At this trial, it was determined that Goeldner should be disbarred. This Court suspended Goeldner.
Twenty-three (23) charges were lodged by Goeldner against Chancellor Baker in March of 1986. These allegations were distributed to the Memphis Commercial Appeal by Goeldner, and published in that paper on March 1, 1986, contrary to Rule 4, Rules of Mississippi Commission on Judicial Performance.
The Judicial Performance Commission investigated all of the Goeldner allegations. Of the twenty-three (23) charges levied by Goeldner against Judge Baker, twenty-one (21) were dismissed as totally groundless; the other two, after extensive hearing, were found insufficient to warrant public reprimand.
The investigation of the Goeldner allegations by the Judicial Performance Commission coincided with a contested election campaign for the post of Chancellor of the Third Chancery District, the post occupied by Judge Baker since 1978. (This election has been enjoined by the federal court). Judge Baker's opponent in the election was an attorney from Grenada, Mississippi. During the investigation of the Goeldner charges, an incident of alleged campaign impropriety was charged in Grenada County.
The campaign incident involved a phone call from Judge Baker to John Grantham on May 9, 1986.
John Grantham had been divorced in September of 1984. In this divorce, styled "Judy Boyd Grantham versus John Leland Grantham, Sr., Grenada County Chancery Court Cause No. 83-12-303," Dennis Baker was the presiding chancellor. The divorce itself was final at the time of the telephone call in question.
This divorce was not amicable, but had resulted in extensive litigation. As a result of the divorce the child of this marriage had experienced severe emotional problems. Chancellor Baker had personally attempted to resolve the conflict between John Grantham and his daughter on several occasions.
In March of 1986 a petition for modification of the divorce settlement was filed by John Grantham; Judy Grantham cross-filed. A hearing was held on these petitions on Friday, March 21, 1986. This hearing was not completed on that day, but was orally continued until June 4, after the scheduled election. The continued case was not docketed, however, and the only *49 record of the continuance is in the transcript of the record.
The telephone call from Chancellor Baker was made while this cause was continued. The case was continued again in June and no action had been taken at the time of the hearing on Chancellor Baker's conduct.
Some time after May 9, 1986, the Judicial Performance Commission amended its charge to include the Grantham matter. Judge Baker cooperated fully in the investigation and proceedings before the Judicial Performance Commission.
When notified of the possible impropriety of the Grantham phone call, Judge Baker checked his personal files and found no file on Grantham. He then checked the court docket and found no Grantham matters pending. It was only after checking the transcript of the March hearing that Judge Baker found that the matter was still pending.
Judge Baker made an "Offer of Judgment" on August 28, 1987 to accept judgment entered by the Commission by way of private admonition or reprimand. This offer was declined. A panel consisting of three persons, Circuit Judge Arthur B. Clark, Jr., Chancellor John C. Love, Jr. and Elizabeth Powers, held hearings on September 21, 1987 and December 9, 1987, and issued its opinion on January 20, 1988. By a two-to-one vote, the panel concluded that Judge Baker's offenses were the result of poor judgment and poor communications, and that a private reprimand was in order. The two judges voted for a private reprimand. A copy of this "Committee Findings of Fact and Recommendation" was forwarded to Judge Baker.
On March 11, 1988, the Commission issued its final "Commission Findings of Fact and Recommendation." This document recommended a public reprimand and stated that the Comission by a five-to-two vote recommended public rather than private reprimand. It further stated that the minority favoring the private reprimand consisted of the two members of the designated panel who had initially recommended the private reprimand, Judges Clark and Love.
On May 2, 1988, while the record of the Commission's proceedings was being prepared for filing with the Supreme Court, Judge Baker filed with this Court a "Motion to Retain Confidentiality of Judge's Identity with Regard to Proposed Public Reprimand Pending Supreme Court Review." On May 24, 1988, by a vote of seven-to-two, the Motion to Retain Confidentiality of Judge's Identity Pending Supreme Court Review was denied.
On June 7, 1988, the record, findings of fact and recommendation were filed by the Commission with this Court. The recommendation of public reprimand, with Judge Baker identified by name, was promptly disseminated through the news media. Articles appeared in the Memphis Commercial Appeal, June 8, 1988; the Grenada Daily Sentinal Star, June 8, 1988; and the Jackson Clarion-Ledger, June 8, 1988.
According to the Associated Press (AP) and United Press International (UPI) articles, reported in the Commercial Appeal and Daily Sentinal Star, respectively, the Commission's Executive Director talked with AP and UPI wire service reporters concerning the charges and recommendation. "The Mississippi Commission on Judicial Performance found ... said Brant Brantly, [sic] the Executive Director of the Commission." "The Commission voted 5-2 to recommend the reprimand, Brantly [sic] said." AP news article reported June 8, 1988, in the Commercial Appeal; "Executive Director Brant Brantley said the Commission found that while campaigning for re-election...." UPI news article reported in June 8, 1988 Daily Sentinal Star.

STANDARD BY WHICH A JUDGE IS TO BE JUDGED
The commentary to Canon 2 of the Code of Judicial Conduct of Mississippi Judges, states:
Public confidence in the judiciary is eroded by irresponsible or improper conduct of judges. A judge must avoid all impropriety and appearance of impropriety. He must expect to be the subject of *50 constant public scrutiny. He must therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.
The Commission found that Judge Baker's conduct fails to conform to the high standard required of a judge and did not uphold the integrity and independence of the judiciary but rather created an appearance of impropriety. While not disputing the Commission's position, we note that: "not every failure of a judge to conform to the standards of the Code amounts to judicial misconduct or merits formal discipline." Matter of Alvino, 100 N.J. 92, 494 A.2d 1014 at 1016 (1985).
We further note that:
While judges are held to the very highest standards of performance in this state, they are not infallible. It was never intended that each and every failure to conform to the standards of the Code would lead to judicial discipline. Id.

DOES JUDGE BAKER'S CONDUCT CONSTITUTE CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE WHICH BRINGS THE JUDICIAL OFFICE INTO DISREPUTE?
Section 177A was ratified on November 6, 1979. It reads in part:
On recommendation of the commission on judicial performance, the supreme court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: . .. (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute... .
The Commission's recommendation states that Judge Baker's act of contacting Grantham is conduct prejudicial to the administration of justice which brings the judicial office into disrepute in that he violated Canons 1, 2 A, 2 B and 7 B(1)(a) of the Code of Judicial Conduct of Mississippi.
Judge Baker contends that this contact was made without knowledge or intent of impropriety and does not warrant public reprimand under § 177A.
There is no simple, black-letter definition of conduct prejudicial to the administration of justice which brings the judicial office into disrepute. The Maryland Supreme Court, in In re Diener and Broccolino, 268 Md. 659, 304 A.2d 587 (1973), cert. denied, 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974) said:
Precisely what "conduct prejudicial to the proper administration of justice" is or may be, in any or all circumstances, we shall not undertake to say. Indeed, a comprehensive, universally applicable definition may never evolve but it is unlikely we shall ever have much trouble recognizing and identifying such conduct whenever the constituent facts are presented.
304 A.2d at 594.
The Nebraska Supreme Court, in defining language identical to that of our § 177A, went into more depth and detail in the case of In re Kneifl, 217 Neb. 472, 351 N.W.2d 693 (1984).[1] The Nebraska Court found that:

*51 Conduct which falls short of reaffirming one's fitness for the high responsibilities of judicial office constitutes conduct prejudicial to the administration of justice that brings the judicial office into disrepute. See Geiler v. Commission on Judicial Qualifications, 10 Cal.3d 270, 515 P.2d 1, 110 Cal. Rptr. 201 (1973), cert. denied 417 U.S. 932, 94 S.Ct. 2643, 41 L.Ed.2d 235 (1974). It includes conduct which would justify a reasonable man in believing that a result achieved by a judge was achieved because of his position and prestige, see In re Foster, 271 Md. 449, 318 A.2d 523 (1974), and conduct which would appear to an objective observer to be not only unjudicial but prejudicial to public esteem for the judicial office. In re Edens, 290 N.C. 299, 226 S.E.2d 5 (1976). It depends not so much on the judge's motives but more on the conduct itself, the results thereof, and the impact such conduct might reasonably have upon knowledgeable observers. In re Stuhl, 292 N.C. 379, 233 S.E.2d 562 (1977). The "judicial office" refers not to the judge as an individual but, rather, to the judiciary. Matter of Dalessandro, 483 Pa. 431, 397 A.2d 743 (1979). Conduct prejudicial to the administration of justice that brings the judicial office into disrepute is less grave than willful misconduct in office. McCartney v. Commission on Judicial Qualifications, 12 Cal.3d 512, 526 P.2d 268, 116 Cal. Rptr. 260 (1974); Geiler v. Commission on Judicial Qualifications, supra.

351 N.W.2d at 695-96.
This Court in interpreting § 177A(e) in In re (Lloyd) Anderson, 412 So.2d 743 (Miss. 1982), as cited in In re (William) Anderson, 451 So.2d 232 (Miss. 1984), has stated that:
[A] judge may also, through negligence or ignorance, not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute. The result is the same regardless of whether bad faith or negligence and ignorance are involved and warrants sanctions.
451 So.2d at 234.
The Commission submits that:
It was improper for Judge Baker to call Mr. Grantham, who was involved in substantial litigation pending before Judge Baker, and solicit his political support. Mr. Grantham interpreted this solicitation to mean there was a connection between political contributions and support and favorable results in litigation. This conduct did not uphold the integrity and independence of the judiciary as required by Canon 1, but in fact created an appearance of impropriety under Canon 2. Judge Baker failed to conduct himself in a manner that promotes public confidence in the integrity and impartiality of the judiciary as mandated by Canon 2A. He also conveyed to Grantham that by contributing political support Grantham would be in a special position to influence him, as prohibited by Canon 2B. And finally, the political activity was inappropriate to Judge Baker's judicial office and failed to maintain the dignity appropriate to holding judicial office contrary to Canon 7B(1)(a).
The primary substantive issue in this case is based on an interpretation of Canon 7 which is currently under intense scrutiny nationwide. The interpretation of Canon 7 is particularly problematic in states where judges must run for reelection in contested political campaigns.[2]
The findings of the Commission and the designated panel are indicators of the quandary facing a sitting judge running in a contested election. The Commission in its "Findings of Fact and Recommendation" of March 11, 1988, stated:

*52 Had Judge Baker simply met Mr. Grantham on the street or at the post office and asked for his vote, this would have been acceptable, but for him to specifically call Mr. Grantham who had been before him in substantial litigation without first determining that the litigation had been finally concluded insofar as Judge Baker was concerned was improper even if there was no intent to imply that support might influence the decision in the pending case.
The Designated Panel who heard the witnesses in the case said:
The majority finds that it would be proper for a judge running for re-election to ask any qualified voter to vote for him without having to research the matter of whether that voter might have a matter pending in court at the time, but that it was improper for a judge to make a personal call to the home of a voter when the judge knew the voter had a considerable amount of litigation in his court and certainly should have known that litigation was still going on in it, or if in doubt on that issue, should have clearly ascertained that it was finally resolved.
Both bodies found that the Judge's error was not in asking for John Grantham's support and vote, but in telephoning Grantham. It was this act of singling out Grantham while a case was pending which raised the specter of influence peddling.
It should be noted that only Mr. Grantham's interpretation of Judge Baker's telephone conversation linked political support with favorable resolution of his litigation.
According to the deposition of Alan Lancaster, the attorney contacted by Grantham after the telephone call, there was no indication that political support would result in a favorable outcome in the pending case at the time of call as can be seen in the following text of the deposition:
Q. When Mr. Grantham contacted you, when was that in relation to his conversation with Judge Baker?
A. Probably the morning after.
Q. What did Mr. Grantham tell you?
A. He indicated that Judge Baker had called him asking for his support in the upcoming election.
Q. What was your reaction?
A. He asked me what he should do.
Q. What did you advise him?
A. I told him if he was in favor of Judge Baker's reelection then he should support him; if he was not, he should not.
* * * * * *
Q. Did Judge Baker's contact with Mr. Grantham have any impact or influence on your decision to continue it at that time?
A. I don't know if it did on that particular time or not. I know as September neared John had a question to me if we should proceed, if we should ask possibly Judge Baker to recuse himself, and that was not because John was dissatisfied with Judge Baker. As best I recall, John's former wife, Judy Grantham, her father, John Boyd, had actively campaigned for Judge Baker and John, there was a question in his mind, he did not know what effect that may or may not have. And another factor, and it was not a minor factor either, we were also representing John at that time in a suit in the United States District Court. (emphasis added)
According to Mr. Grantham's own testimony, Judge Baker did not refer to the pending litigation.
Examination of John Grantham:
Q. In this telephone conversation there was no mention of anything about the case. Isn't that correct?
A. No sir, it was not.
Q. No mention as to whether there was still anything going on in the case or not. Right?
A. That's correct.
Judge Baker did not request campaign funds, nor did he invite Grantham to visit his motel room.
*53 Examination of John Grantham:
Q. There wasn't any request for any financial contribution or anything, was it?
A. Just exactly what I told you, no.
Q. Well, I meant for the record. I wanted to get the record straight that there's not any request for any funds or financial contribution. Right?
A. Well, I took it when he asked the question that he was asking for financial support as well as other support. That's the reason I called my attorney to ask what I should do, but he did not solicit funds.
* * * * * *
Q. Because that's what he told you, to come down  well, he gave you the number.
A. Let me make that perfectly clear. He never told me to come down and see him. He said he needed some help and gave me his room number.
The record is silent as to why and when the room number was given.
Judge Baker admits to contacting Grantham and requesting his support, he contends that this does not warrant a public reprimand under Canon 7.
A survey of recent Mississippi judicial disciplinary cases (see Appendix) reveals that the sanction of public reprimand is imposed for more than one offense. Only one case, In re William Anderson, involved a public reprimand for only one type of offense. Even in this case, Judge Anderson failed on three occasions to issue writs of garnishment after receiving filing fees to do so.
We find no case in which one isolated instance of impropriety warranted public censure.
The Commission compares the case sub judice to Matter of Hotchkiss, 415 Mich. 1101, 327 N.W.2d 312 (1982). Hotchkiss, a candidate for re-election, contacted a lawyer and personally solicited a campaign contribution in clear violation of Canon 7 B(2).
Judge Baker's behavior is not as clear a violation of Canan 7B(1).
Judge Baker candidly admits the impropriety of his action, yet contends "mistake" rather than willful violation. The problem with Judge Baker's position is that Grantham was involved in a child support proceeding. Mississippi courts have asserted continuing jurisdiction over the parties to these proceedings. Judge Baker was certainly aware of this.
Any assessment of these charges is further complicated by Judge Baker's belief that these charges were instigated in retaliation for his filing charges against Chris Goeldner, and public sanction would have a "chilling effect" on judicial reports of lawyer misconduct.
Judge Baker argues that the factors which determine whether a reprimand should be public are not found in this case. He cites case law from other jurisdictions to support his position. These factors include:
(1) Was the wrongful conduct part of a recurring or habitual pattern (thereby necessitating public censure to stop the wrongful conduct). Complaint Concerning Kirby, 354 N.W.2d 410 (Minn. 1984); Matter of Laster, 404 Mich. 449, 274 N.W.2d 742 (1979).
(2) On the other hand, was the incident giving rise to the reprimand an isolated, atypical transaction (thereby requiring only a private, confidential reprimand). Matter of Szymanski, 400 Mich. 469, 255 N.W.2d 601 (1977).
(3) Was the wrongdoing intentional or done with a corrupt motive. In re Dekle, 308 So.2d 5 (Fla. 1975); In re Boyd, 308 So.2d 13 (Fla. 1975).
(4) Was the conduct a "willful disregard of the law and not mere error." Matter of Donohue, 390 Mass. 514, 458 N.E.2d 323 (1983).[3]
*54 Factors which the court may consider as mitigating circumstances, weighing in favor of the confidential, private action, include the following:
(1) The length and character of the judge's public service. Matter of Alvino, 100 N.J. 92, 494 A.2d 1014 (1985).
(2) Positive contributions made by the judge to the courts and the community. Matter of Donohue, 390 Mass. 514, 458 N.E.2d 323, 327 (1983).
(3) The lack of prior judicial precedent on the incident in issue. Matter of Alvino, 100 N.J. 92, 494 A.2d 1014, 1015 (1985).
(4) Commitment to fairness and innovative procedural form on the part of the judge. McCartney v. Commission on Judicial Qualifications, 12 Cal.3d 512, 526 P.2d 268, 116 Cal. Rptr. 260 (1974).
Mississippi Judicial Performance cases indicate that the same factors are considered in this state. In the recent case of In re Inquiry Concerning a Justice Court Judge, Robert C. Cooksey, 515 So.2d 957 (Miss. 1987), the judge's prior disciplinary record was a factor. Public reprimand was based on the enumerated violations "and Judge Cooksey's previous, informal appearance before the Commission." In In re Inquiry Concerning Justice Court Judge, Ralph M. Hearn, 515 So.2d 1225, 1228 (Miss. 1987), the reprimand was made public where the conduct of the judge was "willful and persistent."
We also consider the magnitude of the offense and the number of persons affected, as well as the fact that no "moral turpitude" was involved in this incident.
Judge Baker offered the affidavits of the Chancery Clerks of Tate, DeSoto, Panola, Grenada, Yalobusha and Montgomery Counties. All attested to Chancellor Baker's proper conduct of court, professionalism, fairness, and efficient handling of heavy caseloads.
Statistics in the record show that during Judge Baker's tenure as Chancellor, there have been over 23,000 original filings of new cases in the courts wherein Judge Baker resides. [Affidavit of DeSoto County Chancery Clerk (9100 filings); Affidavit of Panola County Chancery Clerk (4972 filings); Affidavit of Grenada County Chancery Clerk (3130 filings); Affidavit of Tate County Chancery Clerk (2679 filings); Affidavit of Yalobusha County Chancery Clerk (2069 filings); Affidavit of Montgomery County Chancery Clerk (1899 filings). Exhibits to the record]. This number of new filings does not include the numerous petitions for modifications, rehearings, and secondary filings in each case.
Judge Baker served in the Mississippi Legislature (1952-1968), the Mississippi Senate (1960-1964), and the Judiciary (1978-present). Judge Baker fully cooperated with the Commission's investigators and proceedings.
In light of the isolated nature of the offense and Judge Baker's long career of public service, we find that Judge Baker's conduct warrants a private reprimand. While we disagree with the Commission's recommendation, we believe that the Commission has discharged its function in the manner intended by the Mississippi Constitution, our Rules, and this Court. We find no fault in the Commission's procedure and commend the Commission for its work. The result we reach is different from the Commission's and this difference is based upon our interpretation of § 177A and Canon 7, an interpretation we have not heretofore been called upon to make.
COMMISSION'S RECOMMENDATION REJECTED. THE COURT DIRECTS THAT CHANCELLOR BAKER BE PRIVATELY REPRIMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.

APPENDIX

 1. In re Mullen, 530 So.2d 175 (Miss. 1988).
 Sanction Public Reprimand
 $500 fine
*55 30 day suspension w/o pay
 Offense 1) Attention to docket entry
 2) Refused to allow debtor to redeem property
 3) Purchase of replevined vehicle by judge and cover-up
 2. In re Collins, 524 So.2d 553 (Miss. 1987).
 Sanction Removal
 Offense 1) Used county prisoners for personal work
 2) Heard misdemeanor cases "off the record"
 3) Failure to report DUI convictions
 3. In re Chambliss, 516 So.2d 506 (Miss. 1987)
 Sanction Public Reprimand
 Offense 1) Intimidate police officers who stopped Chambliss for
 traffic offenses  attempted to have officers
 fired
 2) Disregard of the law  indicated by failure to
 acquire new license plate and register in county
 of residence
 3) Interview with rape victim
 4) Disregard of judicial process
 5) Involvement in bond election
 4. In re Hearn, 515 So.2d 1225 (Miss. 1987)
 Sanction Public Reprimand
 Offense 1) Found defendants not guilty of traffic violation (no
 trials)
 2) Assessed constable fees to those defendants
 3) In criminal DUI proceedings, defendant found guilty
 by jury  allowed JNOV
 4) Interference with orderly assignment of cases
 5) Improper conduct in handling bad check cases
 5. In re Cooksey, 515 So.2d 957 (Miss. 1987)
 Sanction Public Reprimand
 Offense 1) Disrupting of court proceedings
 2) Accusations of impropriety against another judge
 and wildlife officers
 3) Acting on behalf of criminal defendant
 4) Other similar offense disposed of by informal
 commission action and respondent's assurance that
 conduct would not recur
 6. In re Inquiry Concerning Stewart, 490 So.2d 882 (Miss. 1986)
 Sanction Removal
 Offense 1) Conversion of money
 2) Falsifying court records to cover misconduct
 7. In re Inquiry Concerning Garner, 466 So.2d 684 (Miss. 1985)
 Sanction Removal
 Offense 1) Failure to report fines
 2) Irregular accounting methods
 8. In re Brown, 458 So.2d 681 (Miss. 1984)
 Sanction Removal
 Offense Converting to own use money of civil litigants from
 1976 through 1983 in amount of $21,983
 9. In re Anderson, 451 So.2d 232 (Miss. 1984)
 Sanction Removal
 Offense 1) Perjury
 2) Failure to issue garnishments charging for unissued
 garnishments
10. In re Anderson, 447 So.2d 1275 (Miss. 1984)
 Sanction Public reprimand
 Offense Failure to issue writs of garnishment after receiving
 filing fees
11. In re Lambert, 421 So.2d 1023 (Miss. 1982)
 Sanction Public reprimand and $2,000 fine
 Offense 1) Utilized the criminal process to collect civil debts
 2) Failed to properly docket and process bad checks
 3) Violated statutory provisions of the Mississippi
 Code respecting the jurisdiction of the justice
 court
 4) Failed to properly collect and account for
 contributions to the county law library fund
*56 5) Collected fees in excess of the statutory maximum
 and paid fees in excess of the statutory maximum
 to court officials
 6) Had a pecuniary interest in the outcome of
 litigation filed in his court
 7) Violated several Canons of the Code of Judicial
 Conduct of Mississippi Judges, including but not
 limited to Canons 1, 2A, 3B, and 5C
12. In re Branan, 419 So.2d 145 (Miss. 1982)
 Sanction Public reprimand and $1,000 fine
 Offense Unlawful conduct in procedure used in collecting 286 bad
 checks from Jan 1, 1980 to March 11, 1981
13. In re Anderson, 412 So.2d 743 (Miss. 1982)
 Sanction Removal
 Offense Charging traffic violators a greater sum than the
 officially reported fine

NOTES
[1] The Commission cites In re Kneifl as very similar to the charges filed against Chancellor Baker. On examining Kneifl we find that two charges were filed against that judge. Count I involved an incident in which Kneifl was being booked for driving while under the influence of intoxicants in Iowa. Kneifl cursed a police officer while she was in the performance of her duties, and threatened other officers, also while in the course of their duties, with reprisals by saying that they "better never be" in his court and that if they ever came before him in his court, they would "be sorry." Count II involved an incident in which Kneifl advised a county attorney's partner that one with whom Kneifl was acquainted had been charged with driving while under the influence of intoxicants and refusal to submit to testing. Kneifl asked the partner and county attorney to help or see what could be done for the acquaintance. There is no evidence that Kneifl directly asked the county attorney or his partner to reduce or dismiss the charges against the acquaintance, nor any evidence that he gained any financial or personal gain from the request he made. The commission found that Kneifl attempted to influence the county attorney to reduce the charges.

The Nebraska Supreme Court found that the threats made to police officers were in effect that Kneifl would wreak judicial vengeance upon them. In addition, the effort to influence the county attorney depended on Kneifl's presiding over a court in which that attorney and his partner could be expected to appear. It was the two incidents combined which were found to have brought the judicial office into disrepute. The court's sanctions included: public reprimand, suspension, and alcohol abuse evaluation and treatment.
[2] See Ethical Dilemma of Campaigning for Judicial Office: A Proposed Solution, 14 Fordham Urban Law Journal 353 (1986), in which the authors examine Canon 7, particularly 7 B, and recommend a re-evaluation of Canon 7 B(2).
[3] See also, State Judicial Disciplinary Commissions and Proceedings: Developing Administrative and Legal Standards for Evaluating Judicial Misconduct, 10 Rutgers Camden Law Journal 685 (1979).